## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| SUCCESS MORTGAGE PARTNERS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| -vs- | ) | COMPLAINT |
| | ) | |
| STOCKTON MORTGAGE CORP. | ) | DEMAND FOR A JURY TRIAL |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Success Mortgage Partners, Inc. ("Plaintiff" or "Success Mortgage") by and through its undersigned counsel, hereby brings this Complaint against defendant Stockton Mortgage Corporation ("Defendant" or "Stockton") and alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.     Success Mortgage brings this action against Stockton in response to a brazen and unlawful scheme by Stockton to solicit and hire over 30 Success Mortgage employees (the "Departed Employees"), causing Success Mortgage to shutter at least three branches and lose immeasurable revenue. Most recently, Success Mortgage lost three of its top-producing Florida employees, along with their support teams (collectively the "Florida Employees"), who resigned en masse within days of each other in what was clearly a coordinated plan.

2.     Indeed, this solicitation of the Florida Employees represents only the most recent attack by Stockton against Success Mortgage through unlawful means. Stockton has previously targeted Success Mortgage through engaging in the same pattern and practice of unlawful

solicitation of employees, theft of trade secrets, and diversion of business in Georgia, Michigan, and other parts of Florida.

3.     Not content to merely poach employees directly from Success Mortgage, Stockton also encouraged and assisted Departed Employees to solicit other employees to leave Success Mortgage for Stockton, encouraged and assisted Departed Employees to provide confidential and trade secret information belonging to Success Mortgage ("Confidential and Trade Secret Information") to Stockton, and encouraged and assisted Departed Employees to breach their fiduciary duties to Success Mortgage by diverting Success Mortgage customers to Stockton while they were still licensed with and working for Success Mortgage.

4.     Success Mortgage brings this action to hold Stockton accountable for its willful and egregious interference with Success Mortgage's business.

## PARTIES

5.     Success Mortgage is a Michigan corporation with its principal place of business at 1200 S. Sheldon Road, Plymouth, MI 48170. Success Mortgage is a residential mortgage lender with branch offices nationwide, including, but not limited to the now-shuttered locations at 5137 South Lakeland Drive, Suite 2, Lakeland, Florida 33813 (the "Lakeland Branch"), 4901 26th St. W., Suite B, Bradenton, FL 34207 (the "Bradenton Branch"), and 3237 Satellite Blvd., Duluth, Georgia, 30096 (the "Duluth Branch").

6.     Stockton is a licensed residential mortgage banker (NMLS number 8259) with its principal place of business at 88 C. Michael Davenport Blvd., Frankfort, KY 40601. Stockton has offices in Michigan, including at 951 Wealthy St SE, Grand Rapids, MI 49525 and 39520 Woodward Avenue Suite 205, Bloomfield Hills, MI 48304.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Success Mortgage and Stockton are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      The Court has subject matter jurisdiction over Success Mortgage's federal claims under 28 U.S.C. § 1331, 18 U.S.C. §§ 1030, and 18 U.S.C. § 1962(c) because those claims arise under federal law.

9.      The Court has subject matter jurisdiction over Success Mortgage's state law claims under 28 U.S.C. § 1367(a) because the state law claims are so closely related to the federal claims and share a common nucleus of operative facts with the federal claims, such that the state law claims and the federal claims form part of the same case or controversy.

10.     The Court has personal jurisdiction over Stockton because Stockton carries on a continuous and systematic part of its general business within the state.

11.     Stockton continuously and systematically solicits mortgage loan applications throughout Michigan, which make up a meaningful percentage of its overall business.

12.     In 2021, for example, Stockton reported taking 582 mortgage loan applications in Michigan, representing over 4% of its total application volume for that year. In 2020, Stockton took 210 mortgage loan applications in Michigan, comprising approximately 1.5% of its overall mortgage loan application volume nationwide. In 2019, Stockton reported 268 mortgage loan applications from Michigan, representing over 4.6% of its nationwide mortgage loan application volume.

13.     In addition, Stockton has offices in Grand Rapids, Michigan and Bloomfield Hills, Michigan through which it routinely transacts its affairs.

14.     Stockton also engaged in the pattern and practice of targeting Success Mortgage by inducing Departed Employee Eugene Antonelli in Plymouth, Michigan to leave Success Mortgage for Stockton and by using key Departed Employees based in Michigan to solicit additional Departed Employees to resign from Success Mortgage.

15.     Finally, the Court has personal jurisdiction over Stockton because key aspects of the unlawful conduct at issue in this case took place in Michigan.

16.     Stockton has engaged in a pattern and practice of targeting Success Mortgage branches for unlawful interference, knowing that Success Mortgage is a Michigan corporation and that the Departed Employees had employment agreements based in Michigan law and which select Michigan law to govern any disputes arising from those contracts.

17.     In addition, Stockton intentionally acted unlawfully in Michigan to harm Success Mortgage and used a Michigan-based Departed Employee, Eugene Antonelli, as its agent to attack Success Mortgage through its scheme to misappropriate Success Mortgage Confidential and Trade Secrets Information and divert business from Success Mortgage to Stockton.

18.     Indeed, Stockton's conduct related to the Florida Employees directly involved property and Confidential and Trade Secret Information in Michigan. For example, the Success Mortgage computer servers from which the Florida Employees unlawfully downloaded trade secret materials for Stockton's use were housed in Success's servers hosted at the at 123 NetData Center in Southfield, Michigan. In addition, many of the Departed Employees traveled to Michigan for meetings with and training by Success Mortgage through which they learned confidential business practices and obtained Confidential Information and Trade Secrets.

19.     Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Success Mortgage's claims occurred, and

4

a substantial part of the property that is the subject of this action is located, in the Eastern District of Michigan.

## FACTUAL BACKGROUND

20.     Based on Plaintiff's initial investigation, Stockton has engaged in a multi-year scheme in concert with Departed Employees to defraud and unlawfully undercut Success Mortgage by systematically poaching its employees, misappropriating its Confidential and Trade Secret Information, and diverting business from Success Mortgage to Stockton.

21.     In addition, many of the Departed Employees, including the Florida Employees, used their personal email accounts, to which Plaintiff does not have full access, to engage in their unlawful scheme.

22.     As Success Mortgage's investigation progresses, Success Mortgage expects to amend this complaint to add evidence of additional misconduct and additional claims.

23.     Even based on Success Mortgage's investigation to date, however, there is substantial evidence, described in detail below, to support the claims and relief Success Mortgage seeks through this action.

## Stockton Targeted Success Mortgage in a Long-Running Campaign to Unlawfully Undermine Its Business

24.     This matter is not isolated to a single instance of a former employee breaching a noncompete or non-solicitation agreement with it to work for Stockton.

25.     This matter represents a coordinated campaign by Stockton over at least a two-year period to target Success Mortgage, poach key Success Mortgage employees, and use those Departed Employees to further additional attacks on Success Mortgage through employee poaching, misappropriation of Confidential and Trade Secret Information, and diversion of business from Success Mortgage to Stockton.

26.     Stockton engaged in a concerted campaign focused on Success Mortgage and designed to undermine Success Mortgage's business through unlawful means.

27.     Stockton first attacked Success Mortgage in late 2020 and early 2021 by enticing Success Mortgage employee Craig Bland to breach his employment agreement with Success Mortgage and begin working for Stockton.

28.     Bland had been working as the Branch Manager for Success Mortgage's Duluth, Georgia branch when Stockton targeted him and Success Mortgage for its takeover.

29.     When Stockton engaged in this initial attack on Success Mortgage, it was aware that Bland had an employment agreement with Success Mortgage governed by Michigan law.

30.     Moreover, Stockton induced Bland to misappropriate Confidential and Trade Secret Information belonging to Success Mortgage in order to divert business from Success Mortgage to Stockton and to solicit his entire team to move from Success to Stockton.

31.     Success Mortgage initially believed this unlawful poaching and misappropriation was a singular event and pursued a settlement solely with Bland to resolve what it, at the time, considered a routine employment dispute in March 2021.

32.     However, Stockton's coordinated attack on Success Mortgage continued. In January 2021, Stockton targeted Success Mortgage employee Michael Migliore. Stockton employee Dave Flashner invited Migliore to attend Stockton's regional sales and operations meeting. Flashner had previously worked for Success Mortgage until he resigned and immediately commenced employment for Stockton. Success Mortgage believes that this invitation was part of Stockton's coordinated campaign to induce Success Mortgage employees to breach their contracts with Success Mortgage, to misappropriate Confidential and Trade Secret Information, and to divert business from Success Mortgage to Stockton.

33.     Next, in 2021, Stockton hired Eugene Antonelli as a recruiter, despite the fact that Stockton knew that Antonelli was subject to a post-employment non-solicitation agreement with Success Mortgage, and Stockton then, with Antonelli's assistance, misappropriated Confidential and Trade Secret Information.

34.     From his Michigan location, Antonelli acted as an agent of Stockton in coordinating its further attacks on Success Mortgage.

35.     In July 2021, despite having a contractual obligation not to solicit Success Mortgage employees, Antonelli assisted Stockton in furthering its scheme to target Success Mortgage by reaching out to Jackie Busse through social media. At the time, Busse was part of the Success Mortgage accounting team based in Plymouth, Michigan. Ultimately, Antonelli was unsuccessful in persuading Busse to resign from Success Mortgage.

36.     In September 2021, Antonelli renewed his contact with Busse, this time also communicating with Loni Gerardi, a Success Mortgage Loan Officer based in Lakeland, Florida, and Paula Zak, an Operations employee based in Plymouth, Michigan, with the intent to induce them to terminate their employment with Success Mortgage and cooperate with Stockton's scheme.

37.     While it is not clear how Antonelli's negotiations with Busse, Gerardi, and Zak transpired in September 2021, these interactions occurred shortly before Success Mortgage's litigation against Antonelli. Once the litigation commenced, it was widely known among Success Mortgage employees and involved Gerardi's participation as a witness.

38.     At that time, neither Busse, nor Gerardi, nor Zak resigned from Success Mortgage nor assisted Stockton in its attack.

39.     On or about September 27, 2021, Antonelli continued his campaign of contacting Success Mortgage employees by sending an email to Success Mortgage employees Gayle Geisenhoff and Elyssa Geisenhoff, Success employees based in Plymouth, Michigan, with the subject "Washington County Tuna's," which was a list of realtors useful for business development purposes.

40.     In February 2022, Stockton put its sights on continuing this pattern of unlawful attacks on Success Mortgage by targeting its operations in Florida. Stockton approached Kristin Jamieson, a top-producing Success Mortgage loan officer in Monteverde, Florida.

41.     On or about February 5, 2022, David Stockton of Stockton invited Kristin Jamieson, a Success Mortgage employee, to a Zoom call with himself and Stockton employee Anthony Whiteside to discuss "Marketing & Technology." This was the first in a series of such calls scheduled and conducted between Jamieson and Stockton employees.

42.     Stockton arranged and conducted each of the following calls between Jamieson, and the listed Stockton employee:

a. February 7, 2022: David Stockton; topic: Proforma;

b. February 8, 2022: David Stockton and other unknown callers

c. February 9, 2022: David Stockton, Whiteside, and other unknown callers;

d. February 15, 2022: David Stockton and Tammy Kinser; topic: Ops;

e. February 16, 2022: David Stockton, Kinser, and other unknown callers;

f. February 19, 2022: David Stockton and Erin Brady; topic: Legal questions; and

g. February 24, 2022: David Stockton and other unknown callers.

43.     The purpose of these calls was to poach Jamieson and convince her to misappropriate Confidential and Trade Secret Information and divert business from Success Mortgage to Stockton.

44.     Further, upon information and belief, Stockton offered Jamieson approximately $600,000 as a retention bonus to leave Success Mortgage and join Stockton.

45.     Upon information and belief, David Stockton solicited Jamieson for Confidential and Trade Secret Information.

46.     Jamieson ultimately declined Stockton's invitations to breach her Employment Agreement with Success Mortgage.

47.     Stockton continued with its targeting of Success Mortgage by next attempting to poach Success Mortgage employee Hakim Singleton, who was the Branch Manager at a Pennsylvania-based branch.

48.     On or about July 12, 2022, David Stockton, Kinser, and Whiteside had a one-hour online meeting with Singleton.

49.     On or about July 15, 2022, David Stockton had a 44-minute online meeting with Singleton.

50.     Success Mortgage believes that this meeting was intended to induce Singleton to violate his Employment Agreements, resign from Success Mortgage, divulge Confidential and Trade Secret Information, and divert business from Success Mortgage to Stockton.

51.     Singleton, however, ultimately declined Stockton's attempts to poach him.


**Stockton's Campaign Against Success Mortgage Culminated Most Recently in a Coordinated Attack Against Its Florida Operations**

52.     Next, Stockton attempted to poach multiple Florida-based Success Mortgage employees.

53.     On or about July 14, 2022, Stockton employee David Stockton had a brief online meeting with Success Mortgage employee Adam Klugh as part of its targeting of Success Mortgage. Klugh is based in Success Mortgage's Bradenton, Florida branch.

54.     On or about July 15, 2022, Stockton continued its efforts to recruit Klugh by hosting an hour-long online meeting between Stockton employees David Stockton, Kinser, and Whiteside and Klugh, which was followed immediately by a 50-minute online meeting between David Stockton and Klugh.

55.     This meeting was intended to induce Klugh to violate his Employment Agreements, resign from Success Mortgage, divulge Confidential and Trade Secret Information, and divert business from Success Mortgage to Stockton. Klugh, however, ultimately declined Stockton's attempts to poach him.

56.     Stockton then moved to poach three key Success Mortgage loan officers: Gerardi, Roger McGuire, and Roshel Corcoran.

57.     McGuire worked out of Bradenton, Florida and led a team of four other Success Mortgage employees: Lisa Durkin, Processor; Marcia Lacerda, Office Manager; Margaret Ward, Loan Partner; and Sandy Anderson, Processor.

58.     McGuire resigned from Success Mortgage en masse with his team on August 26, 2022. All five former Success Mortgage employees have since joined Stockton.

59.     Corcoran headed a group of four other Success Mortgage employees in Lakeland, Florida who referred to themselves as Team Roshel: Amy Roman, Director of First Impressions;

Nicole Mahon, Loan Officer Assistant; Nery Saucedo, Loan Partner; and Jameri Esene, Loan Partner.

60.     Gerardi also worked out of Ocala, Florida and shared Lakeland-based support staff with Corcoran.

61.     In May 2022, David Stockton first contacted Corcoran, initiating Stockton's systematic and continuous targeting of Success Mortgage in Lakeland.

62.     On May 13, 2022, David Stockton and Corcoran held an hour-long online meeting.

63.     On May 16, 2022, Stockton continued to court Corcoran and met online with her, Kinser, and Whiteside for the purpose of convincing her to resign from Success Mortgage and abet Stockton's scheme.

64.     On July 14, 2022, David Stockton and Corcoran spoke again and, on July 15, 2022, Corcoran again met online with David Stockton and Kinser for nearly 90 minutes.

65.     In August 2022, Stockton began serious discussions with Team Roshel members to entice them to break their Employment Agreements with Success Mortgage, misappropriate Success Mortgage's Confidential and Trade Secret Information, and divert Success Mortgage customers to Stockton.

66.     On August 2, 2022, Stockton employees Anna Mellinghausen and Whiteside had a Google Meet discussion with Team Roshel in which they discussed their plan to poach Team Roshel members from Success Mortgage, misappropriate Confidential and Trade Secret Information, and divert Success Mortgage's business.

67.     By August 10, 2022, Stockton had coopted the loyalty of Team Roshel members and Gerardi, who had agreed to terminate their Success Mortgage employment in the near future

and use the interim time to misappropriate Confidential and Trade Secret Information for Stockton's benefit.

68.     By August 10, 2022, Team Roshel members were permitting Stockton to ship Stockton equipment across state lines for storage in Success Mortgage offices at the Lakeland Branch in anticipation of converting those offices to Stockton offices.

69.     Throughout August 2022, Stockton, through Antonelli and other Stockton employees, persuaded Team Roshel members and Gerardi to engage in systematic breaches of their employment agreements with Success Mortgage by soliciting Success Mortgage employees to Stockton, disclosing Confidential and Trade Secret Information, and diverting of Success Mortgage business to Stockton.

70.     On August 17, 2022, Stockton employee Brandi Hendren emailed Success Mortgage's Human Resources department seeking a verification of employment for Saucedo, who was applying for a personal mortgage from Stockton less than two weeks prior to his planned resignation from Success Mortgage to work for Stockton.

71.     On or about August 23, 2022, Corcoran, Gerardi, Roman, Mahon, and Esene collectively resigned from Success Mortgage and immediately commenced employment with Stockton, using all the Confidential and Trade Secret Information that they had misappropriated in the prior month to the benefit of Stockton.

72.     On or about August 30, 2022, Saucedo also resigned from Success Mortgage and immediately commenced employment with Stockton, using all the Confidential and Trade Secret Information that he and his coworkers had misappropriated in the prior month to the benefit of Stockton.

**Provisions of the Employment Agreements that Stockton Encouraged and Assisted the Florida Employees to Breach**

73.    McGuire, Corcoran, and Gerardi were each employed by Success Mortgage under a written employment agreement (the "Employment Agreements").

74.    The Employment Agreements were voluntarily entered into by the Florida Employees and were valid and enforceable contracts.

75.    McGuire, Corcoran, and Gerardi each signed materially identical Employment Agreements with Success Mortgage at the commencement of their employment. An exemplar of these agreements is attached to this Complaint as Exhibit A.

76.    The Employment Agreements make clear that McGuire, Corcoran, and Gerardi each owed a duty of loyalty and trust to Success Mortgage with respect to the propriety information that they would learn through the course of their employment and provided that each Employee:

> acknowledges that by reason of his/her employment hereunder, Employee will occupy a position of trust and confidence with Employer and that Employee will have access to confidential and proprietary information and trade secrets of Employer, all of which are the unique and valuable property of Employer. Employee acknowledges that, among other things, its business methods, leads, loan programs, advertising programs, referral sources, marketing strategies, software, investor lists, and employer's documentation (the "Confidential Information") have been developed through the expenditure of substantial time, effort and money which Employer wishes to maintain in confidence and withhold from disclosure to other persons. Accordingly, as a material inducement to Employer to enter into this Agreement, Employee acknowledges that s/he will become intimately involved and/or knowledgeable in regard to Success Mortgage's business and will be entrusted with Success Mortgage's confidential information, and both during his/her employment and after any termination thereof, Employee will use such information solely for Success Mortgage's benefit, and maintain as secret and will not disclose any of the Confidential Information to any third party (except as Employee's duties may require) without Success Mortgage's prior express written authorization.

Employment Agreement § V.A.

77.    The Employment Agreements further made clear that all Confidential and Trade Secret Information belonged solely to Success Mortgage and that McGuire, Corcoran, and Gerardi were not to retain such information after the termination of their employment:

> Employee acknowledges that all tangible property, documents, files, electronic records or data, or records or materials of any sort pertaining to Success Mortgage's business, whether

prepared by Employee or otherwise coming into Employee's possession or control, are the sole and exclusive property of Employer and that Employee has no right to keep or use such documents or things following termination of his/her employment. Employee agrees that, upon any termination of employment, Employee shall not retain any such documents or things in his/her possession and will immediately return them to Employer.

Employment Agreement § V.B.

78.     The Employment Agreements specifically prohibit McGuire, Corcoran, and Gerardi from soliciting or inducing other employees to leave Success Mortgage:

Employee agrees that during his/her employment with Success Mortgage s/he will not directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity solicit any customer or client or prospective customer or client of Success Mortgage to engage in or transact business with himself/herself or any other person or entity for services provided by Success Mortgage.

Employment Agreement, § V.C.

79.     They also explicitly call out that all leads "provided to or worked on by Employee and loans in process are Employer's property" and required McGuire, Corcoran, and Gerardi to agree "not to take any action to divert such loans to a competitor or away from Success Mortgage." Employment Agreement, § V.D.

80.     In addition, McGuire, Corcoran, and Gerardi agreed not to "directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity, solicit, encourage or facilitate any customer or client who has closed a loan with Company in the preceding 12 months, to refinance or otherwise prematurely pay-off such loans." Employment Agreement, § V.E.

81.     Finally, the Employment Agreements provided that McGuire, Corcoran, and Gerardi would "not on behalf of himself or on behalf of any other person, firm, or entity, directly or indirectly solicit any of Success Mortgage's current employees, previous employees, current consultants, previous consultants, current contractors or previous contractors to leave the Employer or form or join another entity." Employment Agreement, § V.F.

14

82.     The Employment Agreements for McGuire, Corcoran, and Gerardi were "made and entered into in the State of Michigan and shall in all respects be interpreted, enforced, and governed by and in accordance with the laws of the state of Michigan." Employment Agreement, § IX.

83.     In addition to her Employment Agreement, Gerardi also signed a "Non-Compete Addendum" in June 2021.

84.     The Non-Compete Addenda provided that Gerardi would not "directly or indirectly engage in any business activity relating to mortgage lending within the Restricted Territory" for a period of twelve months following the date of termination of employment.

85.     The Non-Compete Addendum defined "Restricted Territory" to be the Counties in the State of Florida wherein Gerardi and Success Mortgage had conducted business in the previous twelve months from the last date of employment with Success Mortgage.

86.     It further defined "engaging in business activities to include "own, manage, participate, originate, work, consult, recruit, assist, engage, represent, invest, or the like, in the mortgage lending industry."

87.     The Employment Agreements obligated McGuire, Corcoran, and Gerardi to "show this Agreement to any subsequent employer with whom s/he works within 12 months following the termination of employment with Success Mortgage." Employment Agreement, § V.G.

88.     Upon information and belief, Stockton was aware of the provisions of the Employment Agreements and the Non-Compete Addenda prior to August 2022.

**Stockton Encourages and Assists Team Roshel to Solicit Fellow Success Mortgage Employees for Employment with Success**

89.     Stockton actively encouraged and assisted the Florida Employees in soliciting other Success Mortgage employees to terminate their employment with Success Mortgage and join Stockton.

90.     Corcoran and Roman engaged in this solicitation of Gerardi, Mahon, Saucedo, and Esene while still employed by Success Mortgage, in breach of their contractual and fiduciary duties and at the behest of Stockton.

91.     For example, on August 3, 2022, Corcoran emailed Roman to confirm that Stockton was making her move from Success Mortgage sufficiently attractive to entice her to leave and violate her Employment Agreement and obligations to Success Mortgage. She wrote, "Just making sure your offer letter had a bonus on it for when we move?"

92.     In an August 22, 2022 email to Team Roshel, Roman writes that "Stockton offers more opportunity and also seems to be VERY engaged with the wants and needs of the team. Sometimes change is worth the risk!" At the time all parties to the email were employed in Success Mortgage's Lakeland Branch, and one day later they resigned to join Stockton.

93.     On that same date, Saucedo also participated in the solicitation of fellow Team Roshel members by sending an email to the same group stating, "If we stay I doubt they will open all of the programs that Stockton offers just for us. Just look how long the 55+ is taking. Our benefits will. E [sic] cheaper and amo doesn't match our 401k. To me that's important. Oh and I also like the new laptops! Lol."

94.     Stockton employees also regularly held video conferences with Success Mortgage employees on weekdays during business hours.

95.     To date, Stockton's campaign against Success Mortgage and its attempts to poach Success Mortgage employees has not ceased.

**Stockton Encourages and Assists the Team Roshel in Disclosing to Stockton Confidential and Trade Secret Information**

96.     On multiple occasions, Stockton encouraged and assisted the Florida Employees to send Stockton Confidential and Trade Secret Information.

16

97.     In some instances, the Florida Employees sent Confidential and Trade Secret Information directly to Stockton. In other instances, the Florida Employees sent Confidential and Trade Secret Information to their personal email addresses and, upon information and belief, subsequently sent such Confidential and Trade Secret Information to Stockton. Success Mortgage does not yet have access to the Florida Employees' personal email accounts but intends to obtain access in discovery and conduct a forensic audit of the Florida Employees' use of their personal email accounts to transfer Confidential and Trade Secret Information.

98.     For example, on August 15, 2022, Roman sent multiple emails from her work email address to her personal email address at Gmail. Collectively, these emails represented the strategic information needed to be competitive in the Lakeland, Florida mortgage loan market and constituted Confidential and Trade Secret Information belonging to Success Mortgage

99.     The first of these attached a copy of Success Mortgage's closings by Team Roshel from 2015 through 2021. Upon information and belief, Roman then provided this information to Stockton for its use in competing against Success Mortgage.

100.     The second email sent by Roman on August 15, 2022, attached four Excel spreadsheets from her Success Mortgage email to her personal email at Gmail. These spreadsheets contained Team Roshel cancelled loans, incoming leads, new leads, and "warm leads" from 2021 and 2022.

101.     The third such email from Roman attached three additional Excel Spreadsheets: Roshel Pre-Approvals, Roshel Closed Loans, and Roshel "NO GOOD LEADS." These documents also contained sensitive business information from 2021 and 2022.

102.    The fourth email contained an Excel spreadsheet containing a list of client names collected by Gerardi, a list of real estate agents compiled by Gerardi, and two documents that were part of Success Mortgage's preapproval communications to clients.

103.    Additional emails included the following documents, among others: Incoming Leads_2021; Closed_Loans_2021; Agent List; BranchDoc Folders Update as of April 2022; BranchDoc Folders Update as of May 2022; Credentials; Homestead Exempt 2021 Call Log; Homestead Exempt Call; Loni Gerardi closed Jan thru May 2022; MONTHLY MAILERS; and Order Outs Info.

104.    Roman continued this pattern of emailing Success Mortgage documents to her personal email on August 22, 2022. One such email sent on this date contained the following five Excel spreadsheets: Mailer List; Loni Closings; Roshel Closings --- 2016 to 2021; Daily Worksheet; and Updated Monthly Mailer – August 2022.

105.    Many of the documents transmitted by Roman from her Success Mortgage email to her personal email contained sensitive Success Mortgage information, including details of Success Mortgage's interactions with its clients and prospects.

106.    All materials transferred by Roman to her personal email address were developed as part of the Florida Employees' employment at Success Mortgage.

107.    Upon information and belief, Roman transmitted these documents from Success Mortgage's computer system to her personal email address for purposes of later sharing them with Stockton.

108.    On August 23, 2022, Roman furthered her unlawful campaign of theft and misappropriation by sending documents directly from her Success Mortgage email account to her new Stockton email address, which she accessed using a Success Mortgage computer, accessing

18

Success Mortgage's Michigan-based servers, while on Success Mortgage property, and during business hours for which she was working for Success Mortgage. The first of these documents was a screenshot of Success Mortgage timesheets. Another included a Success Mortgage borrower's signed certification and authorization document.

109.    Corcoran also participated in the scheme to transfer Success Mortgage Confidential and Trade Secret Information, as well as other confidential materials, to her personal email address. For example, on July 14, 2022, Corcoran sent sensitive Success Mortgage financial information to her personal email address from her Success Mortgage email address in a spreadsheet entitled "RC – June 2022."

110.    The RC – June 2022 spreadsheet contained financial information for the Lakeland Branch, including a profit-and-loss statement, branch overhead/expenses, loan level lock revenue details, and expense account information.

**Stockton Encourages and Assists the Florida Employees to Divert Borrowers from Success Mortgage to Stockton**

111.    When a consumer applies for a loan with Success Mortgage, the consumer provides Success Mortgage with a wide variety of sensitive and confidential information that is necessary to facilitate a home loan.

112.    This type of information has independent economic value because of it enables and facilitates the preparation of a loan application. It also separates those borrowers ready, willing, and able to proceed with a loan application from those that are not able or willing to proceed. Indeed, lenders spend millions of dollars each year on leads that have a fraction of the value in comparison to the information Success Mortgage had obtained on these borrowers.

113.    Success Mortgage does not release, share, or disclose this confidential information to the general public. Success Mortgage maintains the secrecy of this confidential information and derives an economic and competitive advantage from maintaining the secrecy of such information.

114.    If a competitor obtained this information, it could undercut Success Mortgage on Success Mortgage's loans and divert Success Mortgage's customers by aggressively pursuing those customers based on the information kept by Success Mortgage. This is precisely what Stockton has done here.

115.    On August 9, 2022, Jeff (last name unknown) from Stockton called the Lakeland Branch to speak with Corcoran about loan terms for borrowers that she was working with on behalf of Success Mortgage. Roman alerted Corcoran about the call using Success Mortgage computers and systems.

116.    On August 22, 2022, Corcoran emailed Mahon about a putative borrower stating, "Let me get the rate from Stockton and then I'll call him." She sent this message while still employed by Success Mortgage and using Success Mortgage's computer systems and email address, including its Michigan-based computer servers.

117.    On August 23, 2022, Gerardi sent an email to Team Roshel, informing them that a client would be "dropping docs to the office for me." She further continued that the client "has not applied yet, she is waiting until I have my own link at Stockton," indicating that the information brought to the Success Offices would be provided to Stockton. At the time, the Florida Employees were employed by Success Mortgage and subject to all restrictions in the Employment Agreements, and these communications all took place using Success Mortgage's email system.

118.    On August 23, 2022, while still employed by Success Mortgage, Mahon used Success Mortgage's computer systems and accounts to provide a mortgage loan applicant with a

link to apply to a mortgage with Stockton. She also notified Esene about this diversion of the borrower to Stockton using Success Mortgage computer systems.

119.    In addition, as recited above, both Corcoran and Roman transmitted vast amounts of Success Mortgage information, including leads and borrower information from their Success Mortgage computers to their personal email accounts for the purpose of transmitting it to Stockton.

## COUNT I: DEFEND TRADE SECRETS ACT
### 18 U.S.C. § 1836

120.    Success Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

121.    Success Mortgage derives independent economic value from the Confidential and Trade Secret Information, the Confidential and Trade Secret Information is not generally known or public, and Success Mortgage took reasonable measures to maintain and protect the secret nature of the Confidential and Trade Secret Information.

122.    The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 183(3), defines a trade secret as, inter alia, "all forms and types of financial, business, scientific, technical, economic, or engineering information … whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" – provided that the owner took "reasonable measures to keep such information secret," and it offers the holder of the trade secret and advantage over competitors who do not know or use the trade secret.

123.    The Confidential and Trade Secret Information at issue in this case was non-public, and Success Mortgage undertook substantial measures to protect the secrecy of the Confidential and Trade Secret Information.

124.    Success Mortgage's Confidential and Trade Secret Information is related to products and/or services used in interstate commerce.

125.    The Florida Employees were entrusted with this Confidential and Trade Secret Information in the performance of their job.

126.    At Stockton's direction, the Florida Employees improperly and unlawfully accessed and disclosed Confidential and Trade Secret Information to Stockton, which knew or had reason to know that the Confidential and Trade Secret Information was acquired by improper means.

127.    Stockton utilized the Confidential and Trade Secret Information in breach of applicable law and duties, without Success Mortgage's express or implied consent, all to Success Mortgage's detriment.

128.    Stockton's actions directly caused Success Mortgage harm through the loss of current and future business and good will.

129.    Unless Success Mortgage is made whole through damages attributable to business and good will lost, Stockton's conduct has and will continue to cause Success Mortgage harm.

130.    Stockton willfully and maliciously misappropriated the Confidential and Trade Secret Information, and thus is liable to Success Mortgage for exemplary damages "in an amount not more than 2 times the amount of the damages awarded," 18 U.S.C. § 1836(b)(3)(C).

## COUNT II: COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. §§ 1030, et seq.

131.    Success Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

132.    Success Mortgage's computers are protected computers for purposes of the Computer Fraud and Abuse Act ("CFAA"), because they are used in or affect interstate commerce.

133.    As Success Mortgage employees, the Florida Employees were subject to and committed to compliance with their Employment Agreements.

134.    The Employment Agreements provide, in relevant part, that employees "will use such information solely for Success Mortgage's benefit, and maintain as secret and will not disclose any of the Confidential Information to any third party (except as Employee's duties may require) without Success Mortgage's prior express written authorization." Employment Agreement § V.A.

135.    Success Mortgage has never authorized the Florida Employees to disclose any information contained on Success Mortgage's protected computers to Stockton Mortgage.

136.    Nor has Success ever authorized Stockton to access Success Mortgage's protected computers.

137.    In violation of the CFAA, the Florida Employees, while employed at Success Mortgage and acting in concert with and as an agent of Stockton, knowingly and with intent to defraud exceeded their authorized access to Success Mortgage's protected computers by transferring information from Success Mortgage's protected computers to their personal email accounts for use by Stockton and directly to Stockton.

138.    In further violation of the CFAA, Stockton, acting in concert with and acquiring access through the Florida Employees, knowingly and with intent to defraud Success Mortgage, directly and indirectly obtained unauthorized access to Success Mortgage's protected computers.

139.    Further, by intentionally accessing Success Mortgage's protected computers without authorization and/or exceeding the scope of their authorized access and obtaining information from Success Mortgage's protected computers directly and indirectly, Stockton additionally violated the CFAA.

140.    As a direct and proximate cause of Stockton's unlawful conduct, Success Mortgages has suffered damages in excess of $5,000.00 for each year in which the conduct has occurred.

141.    However, as a direct and proximate cause of Stockton's unlawful conduct, Success Mortgage has also suffered and will continue to suffer incalculable financial losses, imminent and permanent irreparable harm, loss of the confidentiality of its trade secrets, and other continuing harm.

142.    The losses and harm to Success Mortgage are ongoing and cannot be remedied by damages alone.

### COUNT III: MICHIGAN UNIFORM TRADE SECRETS ACT
### MICH. COMP. LAWS § 445.1903(1)

143.    Success Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

144.    Success Mortgage derives independent economic value from the Confidential and Trade Secret Information, the Confidential and Trade Secret Information is not generally known or public, and Success Mortgage took reasonable measures to maintain and protect the secret nature of the Confidential and Trade Secret Information.

145.    The Departed Employees, including the Florida Employees, were entrusted with this Confidential and Trade Secret Information in the performance of their jobs.

146.    At Stockton's direction, the Departed Employees improperly and unlawfully accessed and disclosed Confidential and Trade Secret Information to Stockton, which knew or had reason to know that the Confidential and Trade Secret Information was acquired by improper means.

147.    Stockton utilized the Confidential and Trade Secret Information in breach of applicable law and duties, without Success Mortgage's express or implied consent, all to Success Mortgage's detriment.

148.    Stockton's actions directly caused Success Mortgage harm through the loss of current and future business and good will.

149.    Stockton has acted knowingly, willfully, and in conscious disregard of the rights of consumers, Success Mortgage, and the general public.

150.    Unless Success Mortgage is made whole through damages attributable to business and good will lost, Stockton's conduct has and will continue to cause Success Mortgage harm.

## COUNT IV: MICHIGAN CONSUMER PROTECTION ACT
## MICH. COMP. LAWS § 445.901, et seq.

151.    Success Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

152.    Stockton, through the Florida Employees, unlawfully diverted borrowers and loans from Success Mortgage to Stockton.

153.    In doing so, the Florida Employees made material misrepresentations to prospective borrowers such that the borrowers reasonably believed that the Florida Employees members worked for Stockton when they still worked for Success Mortgage, in violation of Mich. Comp. Laws § 445.903(1)(bb).

154.    Stockton engaged in this misconduct for the purpose of directly and unfairly competing with Success Mortgage and stealing its customers and business opportunities.

155.    As a direct result of Stockton's actions, Success Mortgage has suffered damages and continues to be harmed in the loss of business and goodwill in the marketplace.

## COUNT V: TORTIOUS INTERFERENCE WITH CONTRACT

156.    Success Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

157.    The Employment Agreements described in detail above were valid, binding, and enforceable contracts voluntarily entered into by the Florida Employees members and Success Mortgage.

158.    Stockton was aware of the Employment Agreements, and it influenced, induced, or coerced the Florida Employees to breach the Employment Agreements in multiple ways.

159.    First, Stockton influenced, induced, or coerced the Florida Employees  and other Departed Employees to violate the non-solicitation provision of the Employment Agreements, which provided, in relevant part, that the Departed Employees, including the Florida Employees, would "not on behalf of himself or on behalf of any other person, firm, or entity, directly or indirectly solicit any of Success Mortgage's current employees, previous employees, current consultants, previous consultants, current contractors or previous contractors to leave the Employer or form or join another entity." Employment Agreement, § V.F.

160.    Through the conduct described in detail above, Stockton influenced, induced, or coerced the Departed Employees, including the Florida Employees, to violate this provision of the Employment Agreements.

161.    Second, Stockton influenced, induced, or coerced the Florida Employees to violate the confidentiality and trade secret provisions of the Employment Agreements. The Employment Agreements provide, in relevant part, that the Departed Employees, including the Florida Employees, "will use such [Confidential Information] solely for Success Mortgage's benefit, and maintain as secret and will not disclose any of the Confidential Information to any third party

(except as Employee's duties may require) without Success Mortgage's prior express written authorization." Employment Agreement, § V.A.

162.    Through the conduct described in detail above, Stockton influenced, induced, or coerced the Departed Employees, including the Florida Employees, to violate this provision of the Employment Agreements.

163.    Third, Stockton influenced, induced, or coerced the Departed Employees, including the Florida Employees, to violate the provision of the Employment Agreements that provided that "all tangible property, documents, files, electronic records or data, or records or materials of any sort pertaining to Success Mortgage's business, whether prepared by Employee or otherwise coming into Employee's possession or control, are the sole and exclusive property of Employer and that Employee has no right to keep or use such documents or things following termination of his/her employment." Employment Agreement, § V.B.

164.    Through the conduct described in detail above, Stockton influenced, induced, or coerced the Departed Employees, including the Florida Employees, to violate this provision of the Employment Agreements

165.    Fourth, Stockton influenced, induced, or coerced the Departed Employees, including the Florida Employees, to violate the provision of the Employment Agreements that provided that all leads "provided to or worked on by Employee and loans in process are Employer's property" and required the Florida Employees to agree "not to take any action to divert such loans to a competitor or away from Success Mortgage." Employment Agreement, § V.D.

166.    Through the conduct described in detail above, Stockton influenced, induced, or coerced the Departed Employees, including the Florida Employees, to violate this provision of the Employment Agreements.

167.    Success Mortgage has suffered harm through the lost profits, loss of business and goodwill in the marketplace and with consumers due to Stockton's misconduct.

### COUNT VI: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

168.    Success Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

169.    The Departed Employees, including Antonelli and the Florida Employees, owed a fiduciary duty to Success Mortgage to act in the best interests of Success Mortgage. These employees violated their fiduciary duty when they acted not for Success Mortgage's benefit, but to benefit themselves and Stockton by soliciting Success Mortgage employees to leave Success Mortgage to work at Stockton, diverting borrowers to Stockton, and giving Stockton Confidential and Trade Secret Information.

170.    Stockton knew the Departed Employees it solicited for employment, and for disclosure of Confidential and Trade Secret Information, owed fiduciary duties to Success Mortgage.

171.    Stockton's actions substantially assisted and encouraged the Departed Employees, including the Florida Employees, to breach their fiduciary duties owed to Success Mortgage.

172.    Stockton's unlawful conduct has caused Success Mortgage to suffer substantial damages.

### COUNT VII: UNJUST ENRICHMENT

173.    Success Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

174.    Stockton unlawfully induced the Departed Employees, including the Florida Employees members, to divert loans from Success Mortgage to Stockton.

175.     Success Mortgage invested substantial time, money, and resources into developing relationships with prospective borrowers and originating mortgage loans from them.

176.     By unlawfully diverting these borrowers from Success Mortgage to Stockton, Success Mortgage conferred a direct benefit upon Stockton.

177.     Stockton was aware that Success Mortgage was conferring such benefits upon Stockton.

178.     Stockton voluntarily accepted and retained the benefits conferred by Success Mortgage.

179.     Under the circumstances, it would be inequitable for Stockton to retain these benefits without paying Success Mortgage for the value of the benefits.

## COUNT VIII: CONVERSION

180.     Success Mortgage repeats and realleges the foregoing allegations as if fully set forth herein.

181.     Stockton, through the Departed Employees, unlawfully diverted borrowers and loans from Success Mortgage to Stockton, and misappropriated Confidential and Trade Secret Information.

182.     Success Mortgage had an ownership interest in the borrowers and loans unlawfully diverted to Stockton, and in the Confidential and Trade Secret Information unlawfully transmitted to Stockton.

183.     Stockton's attempts to exercise dominion over these borrowers, loans, and the Confidential and Trade Secret Information is inconsistent with Success Mortgage's ownership interest.

184.    As a direct result of Stockton's actions, Success Mortgage has suffered damages and continues to be harmed in the loss of business and goodwill in the marketplace.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter an order in favor of Success Mortgage and against Stockton:

a.  awarding Success Mortgage compensatory damages in an amount to be determined at trial by jury;

b. awarding Success Mortgage exemplary, punitive, and liquidated damages in an amount to be determined at trial;

c. awarding Success Mortgage pre-judgment and post-judgment interest;

d. awarding Success Mortgage reasonable attorneys' fees and costs incurred herein; and

e. for such other relief as the Court deems just and proper.


Date:  December 9, 2022

Respectfully Submitted,

*/s/ Robert J. Kinggo III*

*Attorney for Plaintiff*

Robert J. Kinggo III
TROTT LAW, P.C.
31440 Northwestern Hwy., Ste. 145
Farmington Hills, MI 48334
248.593.0496
rkinggo@trottlaw.com