UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUCCESS MORTGAGE PARTNERS,
INC.,

      Plaintiff,

vs.

STOCKTON MORTGAGE CORP.,

      Defendant.

Case No. 22-cv-12996
Hon. Linda V. Parker
Hon. David R. Grand

**ORAL ARGUMENT
REQUESTED**

---

Robert J. Kinggo, III (P68442)
Trott Law, P.C
31440 Northwestern Highway
Suite 200
Farmington Hills, MI 48334
(248) 593-0496
rkinggo@trottlaw.com
*Attorney for Plaintiff Success
Mortgage Partners, Inc.*

John F. Birmingham, Jr. (P47150)
Leah R. Imbrogno (P79384)
Amir El-Aswad (P86092)
Foley & Lardner LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
jbirmingham@foley.com
limbrogno@foley.com
ael-aswad@foley.com
*Attorneys for Defendant
Stockton Mortgage Corp.*

---

### DEFENDANT'S MOTION FOR
### PARTIAL DISMISSAL AND/OR TO STRIKE

Defendant Stockton Mortgage Corporation ("Stockton"), by and through its

attorneys, Foley & Lardner LLP, moves, pursuant to Fed. R. Civ. P. 12(b)(6), for

dismissal with prejudice of Counts I-VI and VIII in the above-captioned matter or,

alternatively, pursuant to Fed. R. Civ. P. 12(f), to strike portions of Plaintiff Success Mortgage Partners, Inc.'s ("SMP") Complaint.

In support of this Motion, Stockton relies on the arguments of law and statements of fact set forth in the attached brief in support including, most fundamentally, that (1) SMP did not sufficiently plead trade secret misappropriation under federal and state law (Counts I and III); (2) SMP failed to state claims for violations of the federal Computer Fraud and Abuse Act (Count II) and Michigan's Consumer Protection Act (Count IV); (3) SMP failed to plead facts sufficient to support its claim for conversion (Count VIII); and (4) SMP's claims for tortious interference with contract (Count V), aiding and abetting breach of fiduciary duty (Count VI), and unjust enrichment (Count VII), are preempted by the Michigan Uniform Trade Secrets Act or are impermissibly duplicative.

On January 19, 2023, Stockton sought concurrence in the relief requested, but such concurrence was denied.

WHEREFORE, Stockton requests this Honorable Court issue an Order:

A.    Dismissing Counts I-VI and VIII of SMP's Complaint with prejudice, or, alternatively, striking portions of SMP's Complaint;

B.    Awarding Stockton its costs and attorney fees in bringing this Motion; and

C.    Awarding all other relief to which Stockton is entitled.

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/John F. Birmingham, Jr.*
John F. Birmingham, Jr. (P47150)
Leah R. Imbrogno (P79384)
Amir El-Aswad (P86092)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
jbirmingham@foley.com
limbrogno@foley.com
ael-aswad@foley.com

*Attorneys for Defendant*
*Stockton Mortgage Corp.*

Dated: January 23, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUCCESS MORTGAGE PARTNERS,
INC.,

      Plaintiff,

vs.

STOCKTON MORTGAGE CORP.,

      Defendant.

Case No. 22-cv-12996
Hon. Linda V. Parker
Hon. David R. Grand

**ORAL ARGUMENT
REQUESTED**

---

Robert J. Kinggo, III (P68442)
Trott Law, P.C
31440 Northwestern Highway
Suite 200
Farmington Hills, MI 48334
(248) 593-0496
rkinggo@trottlaw.com
*Attorney for Plaintiff Success
Mortgage Partners, Inc.*

John F. Birmingham, Jr. (P47150)
Leah R. Imbrogno (P79384)
Amir El-Aswad (P86092)
Foley & Lardner LLP
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
jbirmingham@foley.com
limbrogno@foley.com
ael-aswad@foley.com
*Attorneys for Defendant
Stockton Mortgage Corp.*

---

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL DISMISSAL AND/OR TO STRIKE**

# <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ............................................................. iii

**STATEMENT OF ISSUES PRESENTED** ....................................... vii

**I.      INTRODUCTION** ..................................................................1

**II.     FACTUAL BACKGROUND**....................................................3

      A.    Background on the Parties....................................................3

      B.    SMP's Allegations Regarding Stockton's Hiring Practices.................3

      C.    SMP's Allegations Regarding Its Confidential Information and Trade Secrets ............................................................5

      D.    SMP's Allegations Regarding the Diversion of Business ...................6

      E.    SMP's Employment Agreements ...........................................7

**III.    ARGUMENT**.........................................................................9

      A.    Standard of Review .........................................................9

      B.    SMP Fails to State a Claim under the Defend Trade Secrets Act or Michigan Uniform Trade Secrets Act (Counts I and III) ................9

            i.    SMP Does Not Adequately Allege the Existence of a Protectable Trade Secret ........................................10

            ii.    The Complaint Discloses No "Reasonable Efforts" to Protect the Secrecy of the Purported Trade Secrets.................13

            iii.    SMP Failed to Adequately Allege that Stockton Misappropriated SMP's Trade Secrets ....................................15

      C.    SMP Fails to State a Claim under the CFAA (Count II) ...................16

      D.    SMP Fails to State a Claim under the Michigan Consumer Protection Act (Count IV)...................................................18

      E.    SMP's Common Law Claims are Preempted by Michigan's Uniform Trade Secrets Act (Counts V-VIII) ......................................19

i

F.     SMP's Conversion, Tortious Interference, and Fiduciary Duty Claims are Independently Defective ...................................................20

      i.     SMP's Conversion Claim (Count VIII) Fails Because Borrowers and Loans Are Not Tangible Property Capable of Being Converted ...................................................20

      ii.    SMP's Tortious Interference Claim (Count V) Fails Because SMP Never Pleaded That Stockton's Actions Were Unjustified or That Stockton Was Aware of the Alleged Employment Agreements at Issue...............................22

      iii.   SMP's Claim for Aiding and Abetting Breach of Fiduciary Duty (Count VI) Fails Because It Is Duplicative ................................................................24

IV.    **CONCLUSION** ...........................................................**25**

ii

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Adamo Demolition Co. v. Int'l Union of Op. Eng'r Local 150*,
439 F. Supp. 3d 933 (E.D. Mich. 2020) (Parker, J.)......................................23, 24

*AFT Mich. v. Project Veritas*,
378 F. Supp. 3d 614 (E.D. Mich. 2019) (Parker, J.)..........................................10

*Ammex, Inc. v. McDowell*,
24 F.4th 1072 (6th Cir. 2022) ................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................9, 11, 13, 16

*BDT Prods, Inc. v. Lexmark Int'l, Inc.*,
274 F. Supp. 2d 880 (E.D. Ky. 2003) ....................................................................13

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018) ................................................................................23

*Compuware Corp. v. IBM*,
No. 02-70906, 2003 WL 23212863 (E.D. Mich. Dec 19, 2003) (Steeh, J.).......11

*Diamond Power Int'l, Inc. v. Davidson*,
540 F. Supp. 2d 1322 (N.D. Ga. 2007)................................................................15

*Dongah Tire & Rubber v. Nucleon*
LLC, No. CV 05-60001, 2007 WL 9735675 (E.D. Mich. Jan. 19, 2007)
(Battani, J.)...........................................................................................................13

*Easton Sports, Inc. v. Warrior LaCrosse, Inc.*,
No. 05-CV-72031, 2005 WL 2234559 (E.D. Mich. Sept. 14, 2005) (Steeh, J.) 20

*Econ. Research Servs. Inc. v. Resolution Econ. LLC*,
208 F. Supp. 3d 219 (D.D.C. 2016).....................................................................18

*FCA US LLC v. Bullock*,
446 F. Supp. 3d 201 (E.D. Mich. 2020) (Goldsmith, J.) ....................................10

*Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*,
    799 F. Supp. 2d 846 (N.D. Ill. 2011) ................................................................14

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    285 F.3d 581 (7th Cir. 2002) ..............................................................................11

*Kelly Servs. v. Eidnes*,
    530 F. Supp. 2d 940 (E.D. Mich 2008) (Feikens, J.)..........................................12

*Kendell v. Am. Income Life of Chicago*,
    No. 04-1140, 2006 WL 8443109 (N.D. Ill. Feb. 15, 2006)................................24

*LinTech Global, Inc. v. CAN Softtech, Inc.*,
    No. 19-11600, 2021 WL 1026908 (E.D. Mich. Mar. 17, 2021) (Parker, J.)......20

*McKesson Medical-Surgical, Inc. v. Micro Bio-Medics, Inc.*,
    266 F. Supp. 2d 590 (2003) (Duggan, J.) ..........................................................12

*Medtech Prods. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008) ...............................................................24

*Mills v. Equicredit Corp.*,
    294 F. Supp. 2d 903 (E.D. Mich. 2003) (Borman, J.) .......................................20

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*,
    No. 17 C 923, 2018 WL 1156246 (N.D. Ill. Mar. 5, 2018)................................14

*PLC Trenching Co., LLC v. Newton*,
    No. 11-cv-0515, 2011 WL 13135653 (N.D.N.Y. Dec. 12, 2011)...............17, 18

*Prudential Defense Sols., Inc. v. Graham*,
    498 F. Supp. 3d 928 (E.D. Mich. 2020) (Cleland, J.)........................................10

*Royal Truck & Trailer Sales and Serv. Inc. v. Kraft*,
    974 F.3d 756 (6th Cir. 2020) ..............................................................................17

*Saab Auto. AB v. Gen. Motors Co.*,
    770 F.3d 436 (6th Cir. 2014) ..............................................................................23

*Schwamberger v. Marion Cnty. Bd. of Elec.*,
    988 F.3d 851 (6th Cir. 2021) ................................................................................3

*Taboola, Inc. v. Ezoic Inc.*,
    No. 17 Civ. 9909, 2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020) .....................24

*Van Buren v. United States*,
    --- U.S. ---, 141 S. Ct. 1648 (2021)......................................................................17

*Ventas, Inc. v. HCP, Inc.*,
    No. 07–238, 2009 WL 2912779 (W.D. Ky. Sept. 8, 2009)...............................24

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*,
    774 F.3d 1065 (6th Cir. 2014) ...........................................................................16

*Zaher v. Argent Mortgage Co., LLC*,
    No. 14-11848, 2017 WL 193550 (E.D. Mich. Jan. 18, 2017) (Parker, J.) .........19

## STATE CASES

*Aroma Wines & Equip., Inc. v. Columbia Dist. Servs, Inc.*,
    497 Mich. 337; 871 N.W.2d 136 (2015) ............................................................21

*Badiee v. Brighton Area Schs.*,
    265 Mich. App. 343; 695 N.W.2d 521 (2005) ...................................................23

*Gen-Wealth, Inc. v. Freckman*,
    No. 353584, 2021 WL 1941752 (Mich. Ct. App. May 13, 2021)...............12, 21

*Great N. Packaging, Inc. v. Gen. Tire & Rubber Co*,
    154 Mich. App. 777; 399 N.W.2d 408 (1986) ............................................22, 25

*Hayes-Albion v. Kuberski*,
    421 Mich. 170; 364 N.W.2d 609 (1984) ...........................................................12

*Health Call of Detroit v. Atrium Home & Health Care Servs. Inc.*,
    268 Mich. App. 83, 706 N.W.2d 843 (2005)......................................................23

*Newton v. Bank West*,
    262 Mich. App. 434; 686 N.W.2d 491 (2004) ...................................................19

*Nicholl v. Torgow*,
    330 Mich. App. 660; 950 N.W. 2d 535 (2019) ..................................................25

*Planet Bingo, LLC v. VKGS, LLC*,
    319 Mich. App. 308; 900 N.W.2d 680 (2017) .......................................10, 20, 22

*Primary Ins. Agency Grp, LLC v. Nofar*,
    No. 320039, 2015 WL 1227767 (Mich. App. Mar. 17, 2015) ..........................22

*Smith v. Globe Life Ins. Co*.,
    460 Mich. 446, 597 N.W.2d 28 (1999)................................................................19

*Success Mortgage Partners, Inc. v. Antonelli*,
    Oakland Cnty. Cir. Ct., No. 2021-191245-CB (Warren, J.) (attached as Exhibit
    1) ....................................................................................................................1, 4

*Young v. VanderMeer*,
    No. 349093, 2021 WL 744532 (Mich. App. Feb. 25, 2021) ..............................21

**FEDERAL STATUTES AND RULES**

18 U.S.C.
    § 1030........................................................................................................17
    § 1839....................................................................................................15, 16

Fed. R. Civ. P.
    12(b)(6) ........................................................................................1, 3, 9, 10
    12(f).............................................................................................................9

**STATE STATUTES**

Mich. Comp. Laws
    § 445.904....................................................................................................19
    § 445.1902.............................................................................................15, 16
    § 445.1908....................................................................................................20

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.  Whether Counts I and III, alleging trade secret misappropriation under federal and Michigan law, should be dismissed for failure to sufficiently allege (a) the existence of protectable trade secrets with particularity, (b) that Plaintiff made "reasonable efforts" to protect the secrecy of the purported trade secrets, and (c) that Defendant misappropriated the alleged trade secrets.

    Defendant's Answer:                Yes.

2.  Whether Count II, alleging a violation of the Computer Fraud and Abuse Act, should be dismissed for failure to allege that any individual breached or exceeded their authorized access to Plaintiff's computers.

    Defendant's Answer:                Yes.

3.  Whether Count IV, alleging a violation of Michigan's Consumer Protection Act, should be dismissed because the residential mortgage transactions at issue fall squarely within the statutory exemption applicable to transactions authorized under laws administered by a regulatory board or officer acting under Michigan or federal statutory authority.

    Defendant's Answer:                Yes.

4.  Whether the Michigan Uniform Trade Secrets Act preempts Plaintiff's claims for tortious interference with contract (Count V), aiding and abetting breach of fiduciary duty (Count VI), unjust enrichment (Count VII), and conversion (Count VIII), as those claims are premised upon the alleged misappropriation of confidential and trade secret information.

    Defendant's Answer:                Yes.

5.      Whether Count V, alleging tortious interference with contract, must be dismissed because the Complaint fails to sufficiently allege that Defendant knew about the contracts at issue and their relevant provisions or that Defendant's actions were *per se* unlawful or done with malice and without legal justification.

        Defendant's Answer:                Yes.

6.      Whether Count VI, alleging aiding and abetting breach of fiduciary duty, must be dismissed because it is duplicative of the tortious interference with contract claim.

        Defendant's Answer:                Yes.

7.      Whether Count VIII, alleging the conversion of (a) confidential and trade secret information, (b) borrowers, and (c) loans, must be dismissed in its entirety because the claim is preempted by the Michigan Uniform Trade Secrets Act (to the extent it applies to confidential and trade secret information) and because "borrowers" and "loans" are not tangible property capable of being converted.

        Defendant's Answer:                Yes.

Defendant Stockton Mortgage Corporation ("Stockton") submits this brief in support of its Motion for Partial Dismissal and/or to Strike ("Motion"), pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), requesting that this Court dismiss Counts I-VI and VIII of Plaintiff Success Mortgage Partners, Inc.'s ("SMP") Complaint (ECF No. 1) or strike improper portions of SMP's Complaint.

## I.    <u>INTRODUCTION</u>

SMP accuses Stockton of engaging in a "brazen and unlawful scheme" to "poach" SMP employees, misappropriate its trade secrets, hack its computers, and divert its customers. (Compl. ¶¶ 1-4.) However, even a brief reading of the Complaint reveals SMP's true motivation for this action: a desperate attempt to misuse the court system to substitute for its failure to legitimately compete in the mortgage industry. This is SMP's second bite of the apple, as many allegations before this Court are subject to concurrent litigation before the Oakland County Circuit Court.[1] This action is just as baseless as the action pending in Oakland County. The other action at least involved an ex-employee with a contractual relationship with SMP, whereas here, SMP did not even include as defendants the employees who allegedly engaged in the actionable conduct or breached a contract.

---

[1] See Second Amended Complaint, *Success Mortgage Partners, Inc. v. Antonelli*, Oakland Cnty. Cir. Ct., No. 2021-191245-CB (Warren, J.) (attached as Exhibit 1) (summary disposition motion pending).

First, in Counts I and III, SMP fails to identify trade secrets with the required specificity and instead lumps together mundane business information—including customer and realtor lists developed by individuals—as "trade secret information." As a matter of law, this information does not rise to the level of a trade secret. Further, SMP does not sufficiently plead how it took reasonable steps to protect the secrecy of each alleged trade secret. Finally, it does not plead how <u>Stockton</u>, as opposed to ex-SMP employees, misappropriated anything.

Second, in Count II, SMP alleges a violation of the Computer Fraud and Abuse Act ("CFAA")—an anti-hacking statute—but fails to plausibly allege that Stockton accessed SMP's computers or that anyone else exceeded their authorized access to SMP's computers.

Third, in Count IV, SMP claims that Stockton violated the Michigan Consumer Protection Act ("MCPA") by confusing potential borrowers. But numerous courts, including this Court, have consistently held that residential mortgage loan transactions fall squarely within the Consumer Protection Act's statutory exemption.

Fourth, SMP took a "kitchen sink" approach and brought multiple common law claims (Counts V-VIII) that are (a) preempted by the Michigan Uniform Trade Secrets Act, (b) preempted by each other under Michigan's general rule permitting one recovery for a single injury, and/or (c) independently defective.

SMP's Complaint, filed on December 9, 2022, is critically flawed, and all but one of the claims presented must be dismissed.[2]

## II.    FACTUAL BACKGROUND[3]

### A.    Background on the Parties

SMP describes itself as a Michigan-based "residential mortgage lender with branch offices nationwide." (Compl. ¶ 5.) Stockton is a licensed residential mortgage banker based in Kentucky with offices in Michigan and Florida. (*Id.* ¶ 6.)

### B.    SMP's Allegations Regarding Stockton's Hiring Practices

The core of SMP's Complaint is that Stockton hired, or attempted to hire, numerous SMP employees and used those departed employees to further "attack" SMP. (*Id.* ¶ 25.) First, SMP claims that Stockton induced SMP employee Craig Bland, a branch manager based in Georgia, to breach his employment agreement with SMP in late 2020 and early 2021. (*Id.* ¶¶ 27-29.) SMP also alleges that Stockton "induced Bland to misappropriate [SMP's] Confidential and Trade Secret

---

[2] If the Court grants this Motion, the only remaining claim will be unjust enrichment (Count VII) to the extent it is premised on Stockton's purported diversion of clients. While not challenging it under Fed. R. Civ. P. 12(b)(6), Stockton disputes the claim, will likely challenge it in future motion practice, and reserves all defenses, rights and remedies with regard to this claim.

[3] For purposes of this Motion to Dismiss, SMP's allegations are accepted as true. *See Schwamberger v. Marion Cnty. Bd. of Elec.*, 988 F.3d 851, 856 (6th Cir. 2021). To be sure, Stockton disagrees with SMP's allegations and is confident that any future discovery in this matter will reveal SMP's Complaint to be baseless.

Information." (*Id.* ¶ 30.) But it never identified the alleged trade secrets taken, and it settled a lawsuit with Bland in March 2021. (*Id.* ¶ 31.)

Next, SMP alleges that Stockton invited SMP employee Michael Migliore to attend Stockton's regional sales and operations meeting in January 2021. (*Id.* ¶ 32.) Nothing apparently came of it, as SMP never alleged that Migliore joined Stockton, and Migliore appears nowhere else in the Complaint.[4] (*Id.*) Also in 2021, SMP alleges that Stockton hired SMP employee Eugene Antonelli and misappropriated "Confidential and Trade Secret Information" with his assistance. (*Id.* ¶ 33.) But again, SMP follows its pattern of conflating "confidential information" with trade secrets and does not identify either. (*Id.* ¶¶ 33-39.) SMP also claims that Antonelli solicited SMP employees Loni Gerardi, Jackie Busse, and Paula Zak—allegations subject to concurrent litigation in state court. *(Id.* ¶¶ 35-38.)[5]

SMP alleges that Stockton continued its efforts in 2022 and unsuccessfully solicited Hakim Singleton, a loan officer in Pennsylvania, and Kristin Jamieson and Adam Klugh, loan officers in Florida. (*Id.* ¶¶ 40-55.) SMP pleads that Stockton arranged several meetings with Singleton, Jamieson, and Klugh to solicit them for employment, but the SMP employees ultimately declined. (*Id.*) SMP further

---

[4] In fact, public records show that Migliore is not working for any mortgage lender presently. Nationwide Mortgage Licensing System, http://www.nmlsconsumer access.org (last visited January 23, 2023).

[5] *See Success Mortgage Partners, Inc. v. Antonelli*, Oakland Cnty. Cir. Ct., No. 2021-191245-CB (Warren, J.).

alleged—based on nothing but its "information and belief"—that Stockton solicited the three loan officers for SMP's "Confidential and Trade Secret Information," again without identifying the information. (*Id.* ¶¶ 45, 50, 55.)

Finally, SMP alleges that, in 2022, Stockton solicited and hired several Florida-based SMP employees. (*Id.* ¶¶ 52-72.) Specifically, SMP alleges that Stockton solicited loan officers Roger McGuire, Loni Gerardi, and Roshel Corcoran beginning in May 2022 and convinced them to resign "en masse" to join Stockton in late August 2022, along with their support staff (collectively, the "Florida Employees"). (*Id.*) SMP also alleges that Stockton encouraged and assisted the Florida Employees to solicit each other for employment. (*Id.* ¶¶ 89-95.)

## C.    SMP's Allegations Regarding Its Confidential Information and Trade Secrets

Besides alleging that Stockton "poached" its employees, SMP speculates that Stockton induced the departing SMP employees to divulge its "Confidential and Trade Secret Information." (*Id.* ¶¶ 96-110.) SMP bases its claims on allegations that the Florida Employees, while still employed at SMP, sent SMP information from their SMP email accounts to their personal and Stockton email accounts. (*Id.*)

Specifically, SMP alleges that in July 2022, Corcoran sent herself a spreadsheet titled "RC – June 2022," which included a profit-loss statement, branch expenses, loan level lock revenue details, and expense account information for the Lakeland, Florida, branch. (*Id.* ¶¶ 109-11.) SMP also contends that in July and

August 2022, Amy Roman, a member of "Team Roshel," sent several emails to her personal address, which included (1) Team Roshel mortgage closings from 2015 through 2021; (2) spreadsheets containing Team Roshel's client leads and cancelled loans; (3) pre-approval communications; (4) client and realtor lists collected by Gerardi; (5) monthly mailers; and (6) daily worksheets. (*Id.* ¶¶ 99-104.) Roman also allegedly sent a screenshot of Team Roshel timesheets and a borrower's signed certification authorization document to her Stockton email account. (*Id.* ¶ 108.)

Although SMP lumps the information identified above into a category called "Confidential and Trade Secret Information," SMP's Complaint does not delineate between "confidential" information and trade secrets, nor does it identify the steps it took to protect this information, except for the use of non-disclosure agreements applicable to one category of employee—loan originators. (*Id.* ¶¶ 75-77.) Additionally, "[a]ll materials transferred by Roman to her personal address" were admittedly prepared by the employees, and the employees collected the information within the documents. (*Id.* ¶ 106.) Aside from SMP's pre-approval communications, SMP does not allege that it prepared these documents. Finally, other than broadly guessing, it does not allege that <u>Stockton</u> misappropriated any trade secrets.

### D.   SMP's Allegations Regarding the Diversion of Business

SMP claims that Stockton encouraged and assisted SMP's Florida employees to divert business from SMP to Stockton. (*Id.* ¶¶ 111-19.) SMP alleges that, in

6

August 2022, Stockton shipped equipment to SMP's Florida office to facilitate its conversion to Stockton. (*Id.* ¶ 68.) Additionally, SMP alleges that a Stockton employee called Corcoran that month to speak about loan terms for borrowers with whom she was working on behalf of SMP. (*Id.* ¶ 115.) SMP also cites August 2022 communications from Gerardi in which she indicated that a borrower would be dropping off documents for her and that the borrower had not yet applied for a loan because she was waiting until Gerardi transferred to Stockton. (*Id.* ¶ 117.) Finally, SMP asserts that Nicole Mahon, a member of Corcoran's support staff, used SMP's computer systems to send a loan applicant a link to apply for a mortgage through Stockton, which also occurred in August 2022. (*Id.* ¶ 118.)

###    E.    SMP's Employment Agreements

SMP claims that Stockton engaged in the above-referenced conduct while aware of the former SMP employees' contractual obligations with SMP. (*Id.* ¶ 88.) SMP alleges that Stockton induced Bland to violate his employment agreement with SMP, but it identifies no terms of this agreement. (*Id.* ¶¶ 27-30.) SMP also alleges that Stockton unsuccessfully tried to induce Jamieson, Singleton, and Klugh to violate their agreements; but again, it articulates nothing about what those agreements require. (*Id.* ¶¶ 46, 50, 55.)

SMP asserts only that Florida-based loan officers McGuire, Corcoran, and Gerardi signed identical employment agreements, which contain several restrictive

covenants. SMP contends that "[a]n exemplar of these agreements is attached . . . as Exhibit A." (Compl. ¶ 75.) But no exhibits are attached. We must then rely solely on Plaintiff's allegations to determine the alleged requirements of these employment agreements: (1) the loan originators allegedly acknowledged that they owe a duty of loyalty to SMP and must "maintain as secret" and not share "any materials of any sort pertaining to [SMP's] business" with any third party (*id.* ¶¶ 76-77); (2) the loan originators allegedly agreed not to solicit any current or prospective clients to "transact business" with themselves or "any other person or entity for services provided by [SMP]" while employed by SMP (*id.* ¶ 78); (3) the loan originators allegedly agreed not to solicit any current or former SMP employees, consultants, or contractors (*id.* ¶ 81); and (4) the loan originators allegedly agreed to not take "any action to divert" loans in process with SMP to a competitor or assist clients who closed loans with SMP in the preceding 12 months to refinance or otherwise prematurely pay off their loans (*id.* ¶¶ 79-80).

SMP also claims that Gerardi signed a separate Non-Compete Addendum prohibiting her from engaging in "any business activity relating to mortgage lending within the Restricted Territory" (certain counties in Florida) for 12 months following the date of her termination. (*Id.* ¶¶ 84-87.) Again, SMP did not attach this agreement.

SMP alleges "upon information and belief" that "Stockton was aware of the provisions of the Employment Agreements and Non-Compete Addenda prior to

August 2022," but does not allege that it sent these agreements to Stockton or provide any other basis for Stockton's alleged awareness.[6]

### III.   <u>ARGUMENT</u>

#### A.   Standard of Review

Dismissal of claims is appropriate under Fed. R. Civ. P. 12(b)(6) when a plaintiff fails to allege sufficient facts showing the claim for relief is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ammex, Inc. v. McDowell*, 24 F. 4th 1072, 1079 (6th Cir. 2022). The plausibility standard "asks for more than a 'sheer possibility that a defendant has acted unlawfully.'" *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor should a court "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Under Fed. R. Civ. P. 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

#### B.   SMP Fails to State a Claim under the Defend Trade Secrets Act or Michigan Uniform Trade Secrets Act (Counts I and III)

The federal Defend Trade Secrets Act ("DTSA") and the Michigan Uniform

---

[6] In reality, Stockton's agreements require its employees to abide by the obligations of valid agreements with prior employers.

Trade Secrets Act ("MUTSA") both "provide causes of action and remedies for the misappropriation of trade secrets." *FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 212 (E.D. Mich. 2020) (Goldsmith, J.). Because the pleading requirements under statutes are "almost identical," courts review the claims in tandem. *Prudential Defense Sols., Inc. v. Graham*, 498 F. Supp. 3d 928, 938 (E.D. Mich. 2020) (Cleland, J.). To plead a trade secret misappropriation claim, SMP must plausibly allege that it (1) owns a trade secret and (2) Stockton misappropriated the trade secret. *Planet Bingo, LLC v. VKGS, LLC,* 319 Mich. App. 308, 321; 900 N.W.2d 680 (2017). For information to qualify as a trade secret, (1) it must derive independent economic value from being secret and not be readily ascertainable by proper means and (2) SMP must make reasonable efforts to maintain its secrecy. *FCA US LLC*, 446 F. Supp. 3d at 212. Courts commonly dismiss such claims when plaintiffs fail to identify the trade secrets with specificity and otherwise plead the elements adequately. *See, e.g.*, *AFT Mich. v. Project Veritas*, 378 F. Supp. 3d 614, 622-23 (E.D. Mich. 2019) (Parker, J.) (dismissing trade secret claim under Fed. R. Civ. P. 12(b)(6)).

### i.     SMP Does Not Adequately Allege the Existence of a Protectable Trade Secret

The Court should dismiss Counts I and III because SMP did not sufficiently allege that any trade secrets are at issue. "A party alleging trade secret misappropriation must particularize and identify the purported misappropriated

trade secrets with specificity." *Compuware Corp. v. IBM*, No. 02-70906, 2003 WL 23212863, at *6 (E.D. Mich. Dec 19, 2003) (Steeh, J.). Broad allegations that swaths of information constitute trade secrets are "both too vague and too inclusive" to withstand scrutiny. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (rejecting argument that "all information in or about [plaintiff's] software is a trade secret"). Here, SMP broadly lists "Confidential and Trade Secret Information," without attempting to delineate between the two, and does not meet the demanding requirements for trade secret designation.

SMP claims that Stockton induced Bland and Antonelli to misappropriate its "Confidential and Trade Secret Information" in 2021. (Compl. ¶¶ 30, 33.) But SMP never described or even identified what purportedly confidential information they took. These conclusory allegations warrant dismissal. *Iqbal*, 556 U.S. at 678–79.

SMP provides only slightly more information regarding the alleged trade secrets that Gerardi, Roman, and Corcoran allegedly took, claiming that Stockton, through them, misappropriated lists of clients, leads, and real estate agents. (Compl. ¶¶ 99-104.) But the law in Michigan is clear: "customer lists are not trade secrets, especially those lists that are devised by the employee." *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 951 (E.D. Mich 2008) (Feikens, J.); *McKesson Medical-Surgical, Inc. v. Micro Bio-Medics, Inc.*, 266 F. Supp. 2d 590, 596 (2003) (Duggan, J.) ("To the extent that the list of customers accumulated by the employee includes 'needs of

11

customers' as learned by employee during the course of his employment, such information is [still] not protectable as a 'trade secret.'"); *Hayes-Albion v. Kuberski*, 421 Mich. 170, 183; 364 N.W.2d 609 (1984) (concluding that a compilation of "names and addresses of customers in a personal memo book" did not constitute trade secrets). Indeed, the Michigan Supreme Court observed that "there is nothing improper" in an employee "communicating with customers for whom he had formerly done work in his previous employment." *Hayes-Albion*, 421 Mich. at 183.

SMP also alleges that Stockton misappropriated generic financial information and business processes, including monthly mailers and lists of closed loans. (Compl. ¶¶ 103-110.) However, courts have repeatedly held that basic financial documents and processes are not subject to trade secret protection, even though they may be subject to other confidentiality agreements. *Gen-Wealth, Inc. v. Freckman*, No. 353584, 2021 WL 1941752, *12 (Mich. Ct. App. May 13, 2021) (concluding that the number of households and total assets under management by a financial representative while working for the plaintiff did not constitute trade secrets); *Dongah Tire & Rubber v. Nucleon* LLC, No. CV 05-60001, 2007 WL 9735675, at *9–10 (E.D. Mich. Jan. 19, 2007) (Battani, J.) (rejecting claim that warehousing procedures and business processes that the plaintiff developed were protectable trade secrets). Thus, SMP has not sufficiently identified any trade secrets at issue.

### ii.     The Complaint Discloses No "Reasonable Efforts" to Protect the Secrecy of the Purported Trade Secrets

In addition to failing to sufficiently identify trade secrets with particularity, the Complaint is devoid of any allegations showing that SMP took reasonable efforts to maintain the secrecy of its purported trade secrets. "It is axiomatic that without secrecy, no trade secret can exist." *BDT Prods, Inc. v. Lexmark Int'l, Inc.*, 274 F. Supp. 2d 880, 891 (E.D. Ky. 2003).

SMP proffers only conclusory allegations regarding its protection of the purportedly confidential information, claiming that it "does not release, share, or disclose this confidential information to the general public. [SMP] maintains the secrecy of this confidential information and derives an economic and competitive advantage from maintaining the secrecy of such information." (Compl. ¶¶ 114, 121, 144.) These conclusory allegations should be rejected. *Iqbal*, 556 U.S. at 678–79.

Indeed, SMP does not explain how it "maintains the secrecy" of its trade secrets. (Compl. ¶ 114.) It does not even allege that it locks its doors or imposes password protections on its computers, servers, or particular folders. Although SMP refers to its computers as "protected computers," that reference has nothing to do with whether they are actually secured but instead reflects their jurisdictional status as computers subject to the C. (Compl. ¶ 132) (SMP's "computers are protected computers for purposes of the Computer Fraud and Abuse Act ("CFAA"), because they are used in or affect interstate commerce.")

13

SMP may claim it protects its information through employment agreements (Compl. ¶¶ 76-77), but "[w]hile an agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret, such an agreement, without more, is not enough." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011) (citations omitted).

First, it is unclear who exactly was subject to these alleged confidentiality agreements. The Complaint only pleads that several loan officers were, but it does not allege that all SMP employees, including support staff, were subject to these obligations. (Compl. ¶¶ 73-81.) Second, SMP does not explain how it treats purported trade secret information any differently than ordinary business information. *See Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, No. 17 C 923, 2018 WL 1156246, at *3 (N.D. Ill. Mar. 5, 2018) (dismissing trade secret misappropriation claim because plaintiff pleaded "nothing to differentiate its protective measures for the alleged proprietary trade secrets from those imposed on any other corporate information."). In fact, the only protective measure pleaded— the alleged confidentiality agreements—applies expansively to all "records or materials of any sort pertaining to [SMP's] business." (Compl. ¶ 76.)

Finally, the Complaint acknowledges that ordinary employees and support staff had access to this purportedly secret information. The main alleged "culprit," Roman, is an administrative assistant who allegedly had access to all of this

information and was able to easily send it to her Gmail account. *See Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1337 (N.D. Ga. 2007) (holding that "[b]ecause the information at issue was widely distributed among [plaintiff's] employees . . . [plaintiff's] efforts do not suffice to afford these files trade secret protection."). Thus, SMP failed to sufficiently plead that the "trade secrets" at issue were subject to reasonable precautions to preserve secrecy.

### iii.   SMP Failed to Adequately Allege that Stockton Misappropriated SMP's Trade Secrets

Even if SMP adequately pleaded that it took reasonable steps to protect legitimate trade secrets, which it did not, SMP failed to plausibly allege that *Stockton* misappropriated its trade secrets. "Misappropriation" is defined as the "[a]cquisition of a trade secret . . . by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "[d]isclosure" of the same without consent by one who used improper means to acquire the information. *See* Mich. Comp. Laws § 445.1902(b); 18 U.S.C. § 1839(5). "'Improper means' includes theft, bribery, misrepresentation, or inducement of a breach of a duty to maintain secrecy or espionage . . . ." *See* Mich. Comp. Laws § 445.1902(a); 18 U.S.C. § 1839(6).

Indeed, SMP's allegations focus exclusively on the actions of individuals not yet employed by Stockton and who are not defendants. (Compl. ¶¶ 96-110.) Although SMP can recite conversations between the Florida Employees verbatim (e.g., *id.* ¶¶ 91-93), it relies exclusively on conjecture and its "information and

belief" to support its baseless allegation that "Stockton encouraged and assisted the Florida Employees to send Stockton Confidential and Trade Secret Information." *Id.* ¶¶ 96-107. SMP does not allege what "trade secrets" Stockton possessed or used. The Court should not permit SMP's attempt to attribute the actions of individuals to Stockton based on empty conclusions. *See Iqbal*, 556 U.S. at 678.

### C.     SMP Fails to State a Claim under the Computer Fraud and Abuse Act (Count II)

SMP's claim for indirect liability under the CFAA fails as a matter of law because SMP never alleged an underlying violation of the CFAA such that Stockton can be held indirectly or vicariously liable. Although "[t]he CFAA is primarily a criminal statute," *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1072-73 (6th Cir. 2014), it provides a civil right of action against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer." 18 U.S.C. § 1030(a)(2)(C), (g). To state a claim for vicarious or indirect liability under the CFAA, SMP must plausibly allege "that (1) [Stockton] affirmatively urged or encouraged its employee [or agent] to violate the CFAA, and (2) the employee [or agent] committed such a violation." *PLC Trenching Co., LLC v. Newton*, No. 11-cv-0515, 2011 WL 13135653, at *7 (N.D.N.Y. Dec. 12, 2011) (collecting cases).

An individual can be held directly liable under the CFAA if (1) the individual "intentionally accessed a computer; (2) the access was unauthorized or exceeded [the

individual's] authorized access; (3) through that access, [the individual] thereby obtained information from a protected computer; and (4) the conduct caused loss to one or more persons during any one-year period aggregating at least $5,000 in value." *Royal Truck & Trailer Sales and Serv. Inc. v. Kraft*, 974 F.3d 756, 759 (6th Cir. 2020) (*citing* 18 U.S.C. § 1030(c)(4)(A)(I)). However, the Supreme Court recently clarified that the CFAA only "covers those who obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend." *Van Buren v. United States*, --- U.S. ---, 141 S. Ct. 1648, 1652 (2021). It does *not* cover those who misuse lawfully-accessed information. *Id.* at 1658–59.

Here, SMP never plausibly alleged that the Florida Employees, or any other Stockton agent, breached or exceeded their authorized access to SMP's computers. In fact, SMP readily admits that the Florida Employees accessed SMP's computers while "still employed" at SMP. (Compl. ¶ 137.) If the Florida Employees did not unlawfully access SMP's computers, then neither did Stockton. *Econ. Research Servs. Inc. v. Resolution Econ. LLC*, 208 F. Supp. 3d 219, 232 (D.D.C. 2016); *PLC Trenching Co.,* 2011 WL 13135653, at *7.

In *Economic Research Services Incorporated v. Resolution Economics, LLC,* the U.S. District Court for the District of Columbia dismissed a nearly identical claim for indirect liability under the CFAA. In that case, the plaintiff alleged that the

17

defendants violated the CFAA by "directing [plaintiff's] employees to obtain . . . [the plaintiff's] confidential information on its computers." *Id.* at 231. The court dismissed this claim, however, because "the Complaint d[id] not allege that any defendant accessed or caused any other person to access [the plaintiff's] data that the accesser did not have permission to obtain in the scope of his or her employment with [the plaintiff]." *Id.* at 232. That is precisely the case here—SMP never alleged that Stockton induced the Florida Employees to *breach* or *exceed* their lawful access. Thus, the claim fails as a matter of law. To hold otherwise would convert the CFAA into a misappropriation statute substantially broader than the DTSA or MUTSA.

### D.   SMP Fails to State a Claim under the Michigan Consumer Protection Act (Count IV)

SMP contends that Stockton, through the former Florida employees, violated the MCPA by misrepresenting their affiliations such that borrowers believed they worked for Stockton when they still worked for SMP. (Compl. ¶ 153.) But as this Court astutely noted, "the MCPA does not apply to the mortgage business," and courts have "repeatedly" dismissed similar MCPA claims brought against "mortgage service companies." *Zaher v. Argent Mortgage Co., LLC*, No. 14-11848, 2017 WL 193550, at *5-6 (E.D. Mich. Jan. 18, 2017) (Parker, J.) (collecting cases).

The MCPA expressly does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp.

18

Laws § 445.904(1)(a). In determining whether this exemption applies, "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Globe Life Ins. Co*., 460 Mich. 446, 466; 597 N.W.2d 28 (1999).

Here, "the residential mortgage loan transactions" at issue "fit squarely within the [MCPA's] exemption." *Newton v. Bank West*, 262 Mich. App. 434, 492-93; 686 N.W.2d 491 (2004). The Complaint acknowledges that Stockton Mortgage "is a licensed residential mortgage banker." (Compl. ¶ 6.) Stockton is therefore "regulated by the Commissioner of the Office of Financial and Insurance Services of the Department of Consumer and Industry Services." *Mills v. Equicredit Corp*., 294 F. Supp. 2d 903, 910 (E.D. Mich. 2003) (Borman, J.) (*citing* Mich. Comp. Laws. § 445.1661(a)). The claim, therefore, must be dismissed.

## E.   SMP's Common Law Claims are Preempted by Michigan's Uniform Trade Secrets Act (Counts V-VIII)

By its terms, the MUTSA displaces all "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Mich. Comp. Laws § 445.1908. Thus, where a claim is predicated on the misuse of "trade secrets or confidential information," that claim is preempted by the MUTSA. *Easton Sports, Inc. v. Warrior LaCrosse, Inc.*, No. 05-CV-72031, 2005

WL 2234559, at *1 (E.D. Mich. Sept. 14, 2005) (Steeh, J.); *see also Planet Bingo*, 319 Mich. App. at 320-23. Importantly, "'the disputed status of information as a trade secret does not preclude a court from determining whether a claim or claims are displaced by the MUTSA.'" *Id.* (*quoting Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co*., 270 F. Supp. 2d 943, 946 (W.D. Mich. 2003)). Here, SMP's claims for tortious interference, aiding and abetting breach of fiduciary duty, unjust enrichment, and conversion are premised on the misuse of SMP's alleged trade secrets, and they must be dismissed or stricken to the extent they pertain to the alleged trade secrets. *LinTech Global, Inc. v. CAN Softtech, Inc.*, No. 19-11600, 2021 WL 1026908 (E.D. Mich. Mar. 17, 2021) (Parker, J.) (concluding that the MUTSA preempted tortious interference claim to the extent it rested upon the misappropriation of trade secrets or confidential information).

### F.   SMP's Conversion, Tortious Interference, and Fiduciary Duty Claims are Independently Defective

#### i.   SMP's Conversion Claim (Count VIII) Fails Because Borrowers and Loans Are Not Tangible Property Capable of Being Converted

A common law conversion claim requires allegations of "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip., Inc. v. Columbia Dist. Servs, Inc*., 497 Mich. 337, 361-62; 871 N.W.2d 136 (2015). SMP's conversion claim is limited to three categories of personal property: (1) confidential and trade

20

secret information, (2) borrowers, and (3) loans. (Compl. ¶ 181.) As to the latter two categories, SMP boldly claims it "had an ownership interest in the borrowers and loans unlawfully diverted to Stockton." (Compl. ¶ 182.) But borrowers are *people*, not SMP's property. *Gen-Wealth, Inc.*, 2021 WL 1941752, *8 (rejecting similar conversion claim and emphasizing that the Michigan "Supreme Court has continued to describe a claim for conversion as applying to tangible chattel property.") (*citing Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438-439; 104 N.W.2d 360 (1960)).

Moreover, SMP has no property interest in prospective and intangible loans or business opportunities. *See Gen-Wealth, Inc.*, 2021 WL 1941752 at *8 (observing that non-tangible business interests, including "goodwill," are not "capable of being converted"); *see also Young v. VanderMeer*, No. 349093, 2021 WL 744532, at *5 (Mich. App. Feb. 25, 2021) (affirming dismissal of conversion claims because "the diversion of business opportunities does not involve personal property that was capable of being converted"); *Primary Ins. Agency Grp, LLC v. Nofar*, No. 320039, 2015 WL 1227767, at *3 (Mich. App. Mar. 17, 2015) (rejecting conversion claim premised on theft of customers and their insurance accounts).

To the extent SMP's reference to "loans" means the confidential documents in SMP's possession required to process the potential loans, this aspect of the conversion claim is preempted by the MUTSA. *Planet Bingo*, 319 Mich. App. at

21

687. It also is preempted by SMP's claims for tortious interference and aiding and abetting breach of fiduciary duty to the extent those claims are premised upon the same conduct and injury—inducing the Florida Employees to take SMP's "documents, files, electronic records, or data" regarding prospective mortgages. (Compl. ¶¶ 163, 169); *see Great N. Packaging, Inc. v. Gen. Tire & Rubber Co*, 154 Mich. App. 777, 781; 399 N.W.2d 408 (1986) ("As a general rule, only one recovery for a single injury is allowed under Michigan law."). Thus, SMP's conversion claim must be dismissed in its entirety.

> **ii.      SMP's Tortious Interference Claim (Count V) Fails Because SMP Never Pleaded That Stockton's Actions Were Unjustified or That Stockton Was Aware of the Alleged Employment Agreements at Issue**

Tortious interference with a contract requires "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Servs. Inc*., 268 Mich. App. 83, 89–90, 706 N.W.2d 843 (2005). To state a claim, SMP must allege that Stockton "committed an act that was so wrongful that [it] had no justification whatsoever for committing that act" or that Stockton "committed a lawful act with malicious intent to instigate [SMP's] employees to breach [their] contracts" with SMP. *Badiee v. Brighton Area Schs.*, 265 Mich. App. 343, 367; 695 N.W. 2d 521 (2005); *see also Adamo Demolition Co. v. Int'l Union of Op. Eng'r Local 150,* 439 F. Supp. 933, 942 (E.D. Mich. 2020) (Parker, J.). "Where the [alleged interferer's]

actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Saab Auto. AB v. Gen. Motors Co*., 770 F.3d 436, 442 (6th Cir. 2014) (citations omitted).

Although the Complaint alleges that Stockton intentionally induced the SMP employees to breach various provisions of their alleged respective employment agreements, the only allegations that Stockton knew anything about the employment agreements is based on SMP's "information and belief." (Compl. ¶ 88.) This blunt conclusion cannot satisfy SMP's burden. *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.") Without facts plausibly suggesting that Stockton *knew* about the contracts and the specific terms implicated, Stockton cannot maliciously induce breaches of the same. *See Taboola, Inc. v. Ezoic Inc.*, No. 17 Civ. 9909, 2020 WL 1900496, at * (S.D.N.Y. Apr. 17, 2020) ("[t]he plaintiff must [plead] specific allegations of the defendant's knowledge . . . of the contract, . . . including some knowledge of the terms and conditions of the allegedly-interfered-with contract.") (internal citations and quotation marks omitted).[7]

---

[7] *See also Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 797 (S.D.N.Y. 2008) (rejecting plaintiff's "wholly conclusory allegation that [defendant] knew of the contracts at issue" and dismissing tortious interference claim).

23

Even if SMP adequately pleaded that Stockton knew about the alleged employment agreements, not once did SMP plead that Stockton's actions were "per se unlawful" or done with "malice and without legal justification." *Adamo,* 439 F. Supp. 3d at 942. Nor does the Complaint plead facts that support the inference that Stockton's alleged conduct was illegal, unjustified, or malicious. This omission is critical, particularly because lawful competition has been recognized as a justification to these types of claims. *See, e.g.*, *Kendell v. Am. Income Life of Chicago*, No. 04-1140, 2006 WL 8443109, at *4 (N.D. Ill. Feb. 15, 2006) (*citing Prudential Ins. Co. v. Van Matre*, 511 N.E.2d 740, 744 (Ill. App. 1987)); *Ventas, Inc. v. HCP, Inc.*, No. 07–238, 2009 WL 2912779, at *4 (W.D. Ky. Sept. 8, 2009) ("the very essence of lawful competition is that it necessarily interferes with prospective business relations of others."). Accordingly, SMP failed to state a claim for tortious interference upon which relief can be granted.

### iii.    SMP's Claim for Aiding and Abetting Breach of Fiduciary Duty (Count VI) Fails Because It Is Duplicative

"'Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary.'" *Nicholl v. Torgow*, 330 Mich. App. 660, 675; 950 N.W. 2d 535 (2019) (*quoting LA Young Spring & Wire Corp. v. Falls*, 307 Mich. 69, 106, 11 N.W.2d 329 (1943)). Here, SMP alleges Stockton "assisted and encouraged the Departed Employees, including the Florida Employees, to breach their fiduciary duties" owed

to SMP. (Compl. ¶ 171.) However, the duties that SMP identified are identical to the contractual duties identified in SMP's tortious interference claim; in fact, according to SMP, the contract expressly spells out the fiduciary duties at issue. (*Id.* ¶ 76.) This claim is therefore indistinguishable from the tortious interference claim and must be dismissed. *Great N. Packaging, Inc.*, 154 Mich. App. at 781.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion for Partial Dismissal and/or to Strike, dismissing Counts I-VI and VIII of the Complaint in full and with prejudice, and striking Count VII to the extent it is premised on trade secret misappropriation and therefore preempted by the MUTSA.

Dated: January 23, 2023                    Respectfully submitted,

                                           **FOLEY & LARDNER LLP**

                                           */s/* John F. Birmingham, Jr.
                                           John F. Birmingham, Jr. (P47150)
                                           Leah R. Imbrogno (P79384)
                                           Amir El-Aswad (P86092)
                                           500 Woodward Avenue, Suite 2700
                                           Detroit, Michigan 48226
                                           (313) 234-7100
                                           jbirmingham@foley.com
                                           limbrogno@foley.com
                                           ael-aswad@foley.com

                                           *Attorneys for Defendant*
                                           *Stockton Mortgage Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023, I caused to be electronically filed the foregoing paper with the Clerk of the Court, which will send notification of such filing to all counsel of record via the Court's ECF system.

/s/ John F. Birmingham, Jr.
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
jbirmingham@foley.com
P47150